GEHRING & SATRIALE LLC
Joseph E. Gehring, Jr. (JG8178)
370 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 400-7420
(212) 400-7440 (fax)
Attorneys for Defendant

JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN STANLEY SMITH BARNEY LLC,

Plaintiff,

v.

WILHELM NASH,

Defendant.

**12 CV 4106**

Case No.

ECF Case



## COMPLAINT

Plaintiff Morgan Stanley Smith Barney LLC ("MSSB"),[1] by its undersigned attorneys,

hereby brings the following Complaint for temporary injunctive relief pending arbitration against

Defendant Wilhem Nash ("Nash" or "Defendant") and alleges as follows:

## I.    INTRODUCTION

1.    This dispute arises from Nash's resignation as a financial advisor in November

2010 from MSSB's New York City office, and MSSB's recent discovery earlier this year that

Nash has retained highly confidential and proprietary MSSB client information, including asset

and revenue figures of these clients, as well as client account numbers. This highly sensitive

---

[1] MSSB was formed on June 1, 2009 as a result of a joint venture between Morgan Stanley &
Co. Incorporated ("Morgan Stanley") and Citigroup Inc. The Smith Barney Division of
Citigroup Global Markets, Inc. ("Smith Barney"), along with Morgan Stanley's brokerage
business, was contributed into the joint venture, thereby forming MSSB.

information retained by Nash represents information pertaining to clients with approximately $2 billion under MSSB management. Nash's conduct violates New York law, including, _inter alia_, breach of contract, misappropriation of trade secrets, breach of the duty of loyalty and fiduciary duty, and unfair competition. When Nash resigned from MSSB, he immediately joined a competitor of MSSB, Credit Suisse Securities, LLC (USA) ("Credit Suisse"), in New York City. MSSB is very concerned, and believes, that Nash is utilizing MSSB's client information in an attempt to solicit clients away from MSSB for the benefit of Credit Suisse. In any event, Nash should not be in possession, custody, or control of any such information,

2.     Upon commencing employment with MSSB, Nash worked with a team of MSSB financial advisors managing approximately $2 billion in client assets. Nash introduced very few clients to the team. Nash's interest in the team terminated effective September 2010, but Nash continued to work at MSSB with certain clients assigned to him. Nash has solicited on behalf of Credit Suisse some of the large clients serviced by the team - and clients not assigned to him upon his resignation of employment at MSSB - at the same time he is in possession of this highly confidential MSSB client information.

3.     To prevent irreparable harm arising from this course of wrongdoing, MSSB seeks temporary injunctive relief, _inter alia_, requiring Nash to comply with his contractual and trade secret rights. Indeed, Nash expressly consented to a TRO and a preliminary injunction in his contract – the very relief MSSB seeks in this proceeding.

## II.     PARTIES

4.     MSSB is a limited liability company existing under the laws of the States of Delaware and New York. MSSB's principal place of business is in the State of New York. MSSB maintains a branch office in New York City.

5.     Until November 5, 2010, Nash worked for MSSB in its New York City office. Upon his resignation from MSSB, Nash began working as a financial advisor at Credit Suisse, a direct competitor of MSSB, in its New York City office. Upon information and belief, Nash is a citizen of the State of New Jersey.

### III.     JURISDICTION AND VENUE

6.     Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs, against Nash. Venue is proper in this district because it is the district in which the conduct complained of arose.

### IV.     FACTS COMMON TO ALL COUNTS

7.     Until effective September 2010, Nash worked as part of a team of MSSB financial advisors servicing approximately $2 billion in client assets. Nash introduced very few of these clients to MSSB. After his interest in the team terminated, he continued to work as a financial advisor servicing certain MSSB clients, until he resigned on or about November 5, 2010.

8.     In performing his job as a financial advisor, Nash was given access on a daily basis to highly sensitive information concerning MSSB's clients. In fact, as a member of a team of financial advisors, Nash had access to confidential and proprietary information on MSSB clients with assets under management totaling approximately $2 billion.

9.     In connection with his joining the Firm in 2008, Nash signed a Financial Advisor Employment Agreement. (Exhibit "A" hereto).

10.     In paragraph 2.1 of his Financial Advisor Employment Agreement, Nash expressly acknowledged that: "In the course of your employment with Morgan Stanley, you will have access to information that has been acquired by expenditures of time, effort, and money by Morgan

3

Stanley, and which is valuable and proprietary to Morgan Stanley because, among other reasons, this information is not known by, or available to, the general public or persons or entities other than in the ordinary course of conducting business for Morgan Stanley and its affiliates. This information includes, but is not limited to: (a) customer files, lists, and holding pages; (b) the names, addresses, telephone numbers, and assets and obligations carried in the accounts of Morgan Stanley's customers; (c) Morgan Stanley customer account histories and customer risk profiles. . . .You acknowledge and agree that these Trade Secrets are unique, cannot lawfully be easily duplicated or acquired, and that Morgan Stanley views the Trade Secrets as highly confidential and takes all reasonable measures to maintain their confidentiality and secrecy."

11.     In paragraph 2.3 of his <u>Financial Advisor Employment Agreement</u>, Nash further agreed that:  "You agree that, during the course of your employment with Morgan Stanley or otherwise, you will not remove Trade Secrets or other Company Records from the premises of Morgan Stanley in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Morgan Stanley. . . .You further agree that (a) your use of Trade Secrets and other Company Records will stop immediately upon suspension or termination of your employment relationship with Morgan Stanley; (b) you will immediately deliver to Morgan Stanley, at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Trade Secrets or other Company Records in your possession or control. . . ."

12.     In paragraph 3.1 of his <u>Financial Advisor Employment Agreement</u>, Nash also promised not to solicit, either directly or indirectly, any clients whom he serviced or whose names became known to him during his employment for a period of one year following the termination of his employment.

13.     In paragraph 4 of his <u>Financial Advisor Employment Agreement</u>, Nash also expressly agreed to the entry of a TRO and a preliminary injunction in the event he breached the terms of his confidentiality or non-solicitation covenants and specifically agreed that "Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration."

14.     The <u>Protocol for Broker Recruiting</u> (the "Protocol"), of which MSSB and Credit Suisse are members, permits certain financial advisors who comply with its requirements to retain limited client information upon their departures from their firm, even if the advisor has agreed otherwise.  The Protocol also permits certain financial advisors to solicit the clients they serviced upon their departures, even if the advisor has agreed otherwise.  The Protocol is attached hereto as Exhibit "B".

15.     The Protocol states:  "When RRs [Registered Representatives] move from one firm to another and both firms are signatories to the Protocol, they may take only the following account information:   client name, address, phone number, email address, and account title of the clients that they serviced while at the firm ("Client Information") and <u>are prohibited from taking any other documents or information</u>." (emphasis added).  The Protocol further states that "[r]esignations will be in writing delivered to the local branch management and shall include a copy of the Client Information that the RR is taking with him or her. . . ."  Provided that financial advisors comply in full with the Protocol, including taking only the very limited client information as set forth above, they are then alleviated from their non-solicitation obligations and may solicit the clients they serviced during their employment at their prior firm.

16.     Shortly after Nash's resignation from MSSB, Credit Suisse assured MSSB that Nash complied with the Protocol and confirmed that "he is not in possession of any confidential or

proprietary information from MSSB. . . ." *See* correspondence dated November 18, 2010 (attached as part of Exhibit "C"). Credit Suisse confirmed again "that Mr. Nash assured me he has no such information." *See* correspondence dated November 22, 2010 (attached as part of Exhibit "C"). MSSB specifically relied on the assurances of Credit Suisse's Vice President and Counsel, Dylan Pollack, Esq., and specifically refrained from taking any action against Nash based on these assurances. Despite Credit Suisse's repeated assurances, MSSB recently learned that Nash did not comply with the Protocol.

17.     Indeed, earlier this year, MSSB discovered that Nash had retained MSSB client information well beyond the scope of both the Protocol and his contractual obligations.

18.     For example, just earlier this year, MSSB learned that, on August 31, 2010, only a little more than two months prior to his resignation, Nash e-mailed to his personal e-mail address various lists of MSSB clients serviced by the team of financial advisors with whom Nash worked, containing <u>MSSB account numbers as well as asset and revenue figures pertaining to those clients</u>. MSSB further recently learned that, on September 16, 2010, Nash again e-mailed to his personal e-mail address (as well as to his personal attorney) a list of MSSB clients and <u>those clients' MSSB account numbers</u>. On October 7, 2010, Nash once again sent an e-mail to his personal attorney containing a list of MSSB clients, <u>including their account numbers as well as asset and revenue figures</u>.

19.     After MSSB discovered Nash's e-mails, MSSB requested that Nash sign a sworn affidavit to ensure that he was no longer in possession of any such highly confidential and proprietary MSSB client information. Nash refused to sign the affidavit. The affidavit Nash refused to sign is attached hereto as Exhibit "D". Moreover, on April 4, 2012, MSSB sent Nash's current employer, Credit Suisse, a letter demanding assurances that Nash was not in possession of

MSSB's highly confidential information and that he was not using it to solicit MSSB clients. Credit Suisse has not substantively responded to MSSB's letter. A copy of MSSB's letter to Credit Suisse is attached hereto as Exhibit "E".

20.     As set forth in the accompanying affidavits, MSSB believes that Nash has solicited MSSB's clients with the use of MSSB's highly confidential and proprietary client information.

21.     Unless Nash is enjoined from violating the terms of his agreement and the Protocol, MSSB will be irreparably harmed.

22.     MSSB has no adequate remedy at law.

**COUNT I**
**(BREACH OF CONTRACT)**

23.     The allegations of Paragraphs 1 through 21 are incorporated herein by reference with the same force and effect as if set forth in full below.

24.     Defendant has breached the provisions of his <u>Financial Advisor Employment Agreement</u>, as well as the Protocol.

25.     As a consequence of the foregoing, MSSB has suffered and will continue suffer irreparable harm and loss.

**COUNT II**
**(MISAPPROPRIATION OF TRADE SECRETS)**

26.     The allegations of Paragraphs 1 through 24 are incorporated herein by reference with the same force and effect as if set forth in full below.

27.     The books and records of MSSB, and the confidential information contained therein, are trade secrets subject to protection under the laws of New York.

28.     This information derives independent economic value by not being accessible, through proper means, to competitors who can profit from its use or disclosure.

29.     MSSB has taken reasonable measures under the circumstances to maintain the secrecy of this information.

30.     Nash has misappropriated the trade secret information of MSSB.

31.     As a consequence of the foregoing, MSSB has suffered and will continue to suffer irreparable harm and loss.

## COUNT III
## (BREACH OF THE DUTY OF LOYALTY AND BREACH OF FIDUCIARY DUTY)

32.     The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

33.     Nash has violated his duty of loyalty and fiduciary duty to MSSB by violating his contractual obligations to MSSB and by engaging in other actions contrary to the interests of MSSB.

34.     As a consequence of the foregoing, MSSB has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV
## (UNFAIR COMPETITION)

35.     The allegations of Paragraphs 1 through 33 are incorporated herein by reference with the same force and effect as if set forth in full below.

36.     Nash has engaged in unfair competition.

37.     As a consequence of the foregoing, MSSB has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in the above-referenced Counts, MSSB respectfully requests:

A Temporary Restraining Order and a Preliminary Injunction Order issue immediately, enjoining Nash, directly or indirectly, and whether alone or in concert with others, from:

(i)     Using, disclosing, or transmitting for any purpose, including for the purposes of soliciting MSSB clients, any records, documents, or information relating in any way to the clients, business or marketing strategies, or business operations of MSSB, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(ii)    Retaining, in any form, including without limitation original, copied, handwritten, computerized, or any other form, any Records and Information; and

(iii)   All other such acts as this Court deems appropriate for injunctive relief.

WHEREFORE, by virtue of the foregoing acts complained of above, MSSB demands judgment in its favor and against Nash for temporary and preliminary injunctive relief pending the outcome of arbitration in accordance with Rule 13804 of the Code of Arbitration of the Financial Industry Regulatory Authority.

Dated: May 23, 2012

GEHRING & SATRIALE LLC

By:     /s/
        Joseph E. Gehring, Jr. (JG8178)
        370 Lexington Avenue, Suite 1200
        New York, New York 10017
        (212) 400-7420
        (212) 400-7440 (fax)

        COSS & MOMJIAN, LLP
        111 Presidential Boulevard, Suite 233
        Bala Cynwyd, PA 19004
        610-667-6800
        610-667-6620 (fax)

        Attorneys for Plaintiff

**EXHIBIT A**

*MORGAN STANLEY*                    FINANCIAL ADVISOR
                                    EMPLOYMENT AGREEMENT

This agreement (referred to as the, or this, "Agreement") is made between Morgan Stanley & Co. Incorporated, a Delaware Corporation, (referred to as "Morgan Stanley") and

_____

In consideration of your compensation and employment by Morgan Stanley as a Financial Advisor, and for other good and valuable consideration, you hereby agree as follows:

1.    **AT-WILL EMPLOYMENT AND TERMINATION**

Nothing in this Agreement is a promise of employment for a fixed term. Your employment by Morgan Stanley is strictly at-will and may be terminated by either party, for any reason or for no reason, at any time, with or without notice, and with or without cause. As used in this Agreement, "termination" includes (1) voluntary or involuntary resignation, (2) retirement, (3) release due to a reduction in force or closing of a branch office, or (4) discharge by Morgan Stanley. _____ (EMPLOYEE INITIALS)

2.    **TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION**

2.1   In the course of your employment with Morgan Stanley, you will have access to information that has been acquired by expenditures of time, effort, and money by Morgan Stanley, and which is valuable and proprietary to Morgan Stanley because, among other reasons, this information it is not known by, or available to, the general public or persons or entities other than in the ordinary course of conducting business for Morgan Stanley and its affiliates. This information includes, but is not limited to: (a) customer files, lists, and holding pages; (b) the names, addresses, telephone numbers, and assets and obligations carried in the accounts of Morgan Stanley's customers; (c) Morgan Stanley customer account histories and customer risk profiles; (d) computer software or hardware for use in computer or word processing equipment; (e) all training material forwarded to you during your employment (including but not limited to books, papers, records, videotapes and recordings); (f) documents or computer programs prepared or generated by you, if any, using Morgan Stanley records or information; (g) Morgan Stanley's business or marketing plans and strategies; and (h) other information or materials subject to intellectual property protection that are highly confidential. All of the above described information and documents are hereinafter collectively referred to as "Trade Secrets." You acknowledge and agree that these Trade Secrets are unique, cannot lawfully be easily duplicated or acquired, and that Morgan Stanley views the Trade Secrets as highly confidential and takes all reasonable measures to maintain their confidentiality and secrecy. _____ (EMPLOYEE INITIALS)

2.2   In the course of your employment with Morgan Stanley, you will also have access to records, documents, and information concerning the business and affairs of Morgan Stanley and its employees (hereinafter "Company Records") that are and will always be the confidential and exclusive property of Morgan Stanley. Company Records include, but are

not limited to, Morgan Stanley books and records and excerpts or derivations thereof. Company Records also include information and documents described as Trade Secrets in Paragraph 2.1 above. Company Records include the originals and all copies thereof (whether in hard copy, computerized, or any other form). _____(EMPLOYEE INITIALS)

2.3    You agree that, during the course of your employment with Morgan Stanley or otherwise, you will not remove Trade Secrets or other Company Records from the premises of Morgan Stanley in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Morgan Stanley. You also agree that you will not use Trade Secrets or other Company Records for any purpose other than the purpose of conducting the business of Morgan Stanley. You further agree that (a) your use of Trade Secrets and other Company Records will stop immediately upon the suspension or termination of your employment relationship with Morgan Stanley; (b) you will immediately deliver to Morgan Stanley, at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Trade Secrets or other Company Records in your possession or control; and (c) you will permit Morgan Stanley to inspect, prior to removal, any materials you intend to take from Morgan Stanley offices when your employment with Morgan Stanley is suspended or terminated. In addition, you agree that, should you decide to terminate your employment with Morgan Stanley, your use of Trade Secrets and other Company Records will stop immediately and permanently, unless otherwise agreed to by Morgan Stanley. _____(EMPLOYEE INITIALS)

2.4    You agree that, both during and subsequent to the course of your employment with Morgan Stanley, you will not disclose to any person or entity the contents, in whole or in part, of Trade Secrets or other Company Records, except in the ordinary course of conducting business for Morgan Stanley. _____(EMPLOYEE INITIALS)

2.5    You will not at any time assert any claim of ownership or other property interest in Trade Secrets or other Company Records. _____(EMPLOYEE INITIALS)

2.6    If you create, contribute to or conceive any copyrightable work within the scope of your employment at Morgan Stanley, Morgan Stanley may assert that such copyrightable work is a "work-made-for-hire," and you agree that, upon Morgan Stanley's assertion that a work is a "work-made-for-hire," Morgan Stanley shall own all such rights in the copyrightable work. _____(EMPLOYEE INITIALS)

3.    **UNFAIR COMPETITION**

3.1    You acknowledge and agree that the resources, training, goodwill and reputation of Morgan Stanley are the primary and material factors in your ability to develop and service Morgan Stanley customers, and that all customers serviced by you on behalf of Morgan Stanley are customers of Morgan Stanley. _____(EMPLOYEE INITIALS)

3.2    For a period of one year following termination of employment for any reason, you will not solicit or attempt to solicit, directly or indirectly, any of Morgan Stanley's customers who were served by you, or whose names became known to you, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities,

commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. For purposes of this provision, the term "solicit" includes initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged. ✓✓ (EMPLOYEE INITIALS)

3.3 For a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. ✓ (EMPLOYEE INITIALS)

## 4.  RIGHT TO INJUNCTION

4.1 In the event you breach any of your obligations concerning "Trade Secrets and Other Confidential Information" or "Unfair Competition" contained in paragraphs 2 or 3 of this Agreement, you agree that Morgan Stanley will be entitled to injunctive relief from a court of competent jurisdiction, or from any arbitration forum specified in this Agreement. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration (as provided for in paragraph 7 of this Agreement). Therefore, YOU CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:

(a) that you immediately return to Morgan Stanley all Trade Secrets and Company Records, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any information contained in such materials; ✓ (EMPLOYEE INITIALS)

(b) that, for a period of one year following the termination of your employment, you be enjoined and restrained from soliciting or attempting to solicit, directly or indirectly, any of Morgan Stanley's customers who were served by you, or whose names became known to you, while in the employ of Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged; ✓ (EMPLOYEE INITIALS) and

(c) that, for a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which

Morgan Stanley or any of its affiliates is engaged. _____ (EMPLOYEE INITIALS)

4.2    You agree that Morgan Stanley's application to any court for an injunction or other provisional relief will not constitute a waiver by Morgan Stanley of its right to arbitration as provided for in paragraph 7.1 of this Agreement, and that any hearing on the merits in such dispute shall be conducted in arbitration. If, after issuance of a temporary restraining order or permanent injunction, the parties proceed to arbitration, you agree to consent to expedited hearing procedures for such arbitration. You further agree that any injunction or provisional order shall stay in full force and effect until a panel of arbitrators renders a full and final decision on the merits. _____ (EMPLOYEE INITIALS)

5.    **ADHERENCE TO APPLICABLE LAWS AND POLICIES**

You agree to become familiar with and abide by the rules, regulations, and policies of Morgan Stanley, the Financial Industry Regulatory Authority, and any other securities and commodities exchanges of which Morgan Stanley is a member. You also agree to become familiar with and abide by any applicable state and federal securities laws and regulations. _____ (EMPLOYEE INITIALS)

6.    **HOLD HARMLESS**

You agree to indemnify Morgan Stanley for, and hold it harmless from, any and all losses or liabilities incurred by Morgan Stanley caused by (a) your violation of applicable state or federal laws, duties, rules or regulations; (b) your violation of Morgan Stanley's policies; or (c) your breach of any of the provisions of this Agreement. You further agree to indemnify Morgan Stanley, consistent with and as permitted by law, for your commission deficits, other employee losses, or customer losses, that are caused or permitted by you. Consistent with and as permitted by applicable law, you authorize Morgan Stanley, with or without notice to you, to withhold amounts equal to any such losses or liabilities from amounts payable, due, or held in an account or otherwise for you, including, but not limited to, assets held by you in any investment or securities related account(s), and from any commissions, bonuses, deferred, incentive or other compensation (above minimum salary or draw). _____ (EMPLOYEE INITIALS)

7.    **ARBITRATION**

7.1    Any controversy or claim arising out of or relating to (i) your employment by Morgan Stanley (excluding statutory employment claims and other claims covered by Paragraph 7.2), or (ii) this Agreement (or its breach), will be settled by arbitration before the Financial Industry Regulatory Authority ("FINRA") in accordance with their respective rules, and judgment upon an award issued by the arbitrator(s) may be entered in any court having jurisdiction. Except as otherwise expressly agreed, any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration.

This paragraph will not be deemed a waiver of Morgan Stanley's right to injunctive or provisional relief from any court, as provided for in this Agreement. _____ (EMPLOYEE INITIALS)

7.2 Notwithstanding the arbitration requirement of paragraph 7.1 above, you agree that certain other claims (including, but not limited to, statutory discrimination and other statutory employment claims) must be submitted to Morgan Stanley's Alternate Dispute Resolution Program, "Convenient Access to Resolutions for Employees" ('CARE'). Claims required to be submitted to CARE are recited in the CARE Guidebook maintained by the CARE Program Administrator's Office and in the CARE Program explanatory brochure. _____ (EMPLOYEE INITIALS)

8. SUCCESSORS, ASSIGNS AND AFFILIATES

The provisions, benefits and obligations of this Agreement will run to the successors, affiliates and assigns of Morgan Stanley. _____ (EMPLOYEE INITIALS)

9. GOVERNING LAW

This Agreement will be governed by and construed in accordance with the laws of the state in which you signed this Agreement. _____ (EMPLOYEE INITIALS)

10. WAIVER

Morgan Stanley's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Morgan Stanley's right to enforce any other breach of the same or any other covenant. _____ (EMPLOYEE INITIALS)

11. SEVERABILITY

11.1 If any provision or portion of any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body, or a court of competent jurisdiction, the remainder of the Agreement will remain in full force and effect. _____ (EMPLOYEE INITIALS)

11.2 If any of the covenants, including but not limited to restrictive covenants, contained in this Agreement or any part thereof are held to be unreasonable and/or unenforceable, the parties agree that the court or arbitrator(s) making such determination shall have the power to revise such provision(s), so as to render such provision(s) reasonable and enforceable, upon which such provision(s) shall then be enforceable. _____ (EMPLOYEE INITIALS)

12. ATTORNEYS' FEES

In the event of a breach of any of the terms of this Agreement by you, you agree to pay all fees and costs, including reasonable attorneys' fees, incurred by Morgan Stanley in connection with the enforcement of this Agreement. _____ (EMPLOYEE INITIALS)

13. **ENTIRE AGREEMENT**

This writing constitutes the entire agreement of the parties with respect to the subject matter recited in this Agreement. This Agreement may be amended only by a writing signed by both you and Morgan Stanley. _____ (EMPLOYEE INITIALS)

14. **EMPLOYEE REPRESENTATION**

You represent as follows:

I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MORGAN STANLEY QUESTIONS ABOUT IT. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM. MY INITIALS FOLLOWING THE ABOVE PROVISIONS INDICATE THAT I HAVE READ THEM. MY SIGNATURE BELOW INDICATES MY AGREEMENT TO ALL PROVISIONS HEREIN WHETHER OR NOT I HAVE INITIALED THEM.

Signed in the State of _New York, New York_

_____          _3/14/08_
Employee's Signature                      Date

MORGAN STANLEY & CO. INCORPORATED

_____          _3 · 19 · 08_
Branch Manager's Signature              Date

# ADDENDUM OF FINANCIAL ADVISOR EMPLOYMENT AGREEMENT

1. Paragraphs 2.1, 2.2, 2.3, 2.4, 2.5, and 4.1(a) of the Financial Advisor Employment Agreement ("Agreement") are hereby amended by adding the following at the end of said paragraphs:

> Notwithstanding anything to the contrary in paragraphs 2.1, 2.2, 2.3, 2.4, 2.5, and 4.1(a), upon termination of employment with Morgan Stanley for any reason, Employee may retain copies of and use publicly available customer contact information (names, address and telephone numbers) for those customers whom he/she serviced prior to his/her employment with Morgan Stanley. A list of such customers' information shall be attached to this Agreement as Exhibit "A." This exception to paragraphs 2.1, 2.2, 2.3, 2.4, 2.5, and 4.1(a), shall become effective only upon the payment by Employee of all sums owed to Morgan Stanley at the time of termination under any promissory note signed by Employee.

2. Paragraphs 3.1, 3.2, and 4.1(b) of the Agreement are hereby amended by adding the following at the end of said paragraphs:

> Notwithstanding anything to the contrary in paragraphs 3.1, 3.2, and 4.1(b), upon termination of employment for any reason, Employee may solicit and attempt to solicit, directly or indirectly, those customers whom he/she serviced prior to employment with Morgan Stanley. A list of such customers' names is attached to this Agreement as Exhibit "A." This exception to paragraphs 3.1, 3.2, and 4.1(b) shall become effective only upon the payment by Employee of all sums owed to Morgan Stanley at the time of termination under any promissory note signed by Employee.

3. If there is any conflict between the Addendum and the Financial Advisor Employment Agreement, this Addendum shall control.

4. This Addendum is confidential. As a further term of the Agreement, Employee agrees that he will not disclose the existence of this Addendum or terms of this Addendum to any persons or parties; provided, however that this prohibition shall not apply to disclosures ( i ) to Employee's immediate family; ( ii ) to Employee's attorneys and/or tax advisors; ( iii ) to requests initiated by any state or federal regulatory agency or securities industry self-regulatory organization; ( iv ) in response to a validly issued subpoena or court order; or (v) as otherwise permitted or required by law in connection with any court action, arbitration or other legal proceeding to enforce this provisions of this Agreement. Any individuals to whom Employee makes any disclosure in accordance with items ( i ) and/or ( ii ) of this paragraph shall be advised by Employee of this confidentiality provision prior to any such disclosure, and shall agree thereafter to be bound by this confidentiality provision. Unless otherwise prohibited by applicable law, regulation or court order, prior to making any disclosure in accordance with items ( iii ) and/or ( iv ) of this paragraph, Employee shall provide

his/her District Manager with notice of the request, subpoena or court order, so that Morgan Stanley may have the opportunity to answer, object or otherwise respond to it.

_____    _____ 3/18/08
Employee's Signature                          Date

MORGAN STANLEY & CO. INCORPORATED

By: _____    _____ 3-19.08
        Branch Manager                                Date

By: _____    _____ 3-28-08
        District Manager                                Date

**EXHIBIT B**

## PROTOCOL FOR BROKER RECRUITING

The principal goal of the following protocol is to further the clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ("RRs") between firms. If departing RRs and their new firm follow this protocol, neither the departing RR nor the firm that he or she joins would have any monetary or other liability to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm, provided, however, that this protocol does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for "raiding." The signatories to this protocol agree to implement and adhere to it in good faith.

When RRs move from one firm to another and both firms are signatories to this protocol, they may take only the following account information: client name, address, phone number, email address, and account title of the clients that they serviced while at the firm ("the Client Information") and are prohibited from taking any other documents or information. Resignations will be in writing delivered to local branch management and shall include a copy of the Client Information that the RR is taking with him or her. The RR list delivered to the branch also shall include the account numbers for the clients serviced by the RR. The local branch management will send the information to the firm's back office. In the event that the firm does not agree with the RR's list of clients, the RR will nonetheless be deemed in compliance with this protocol so long as the RR exercised good faith in assembling the list and substantially complied with the requirement that only Client Information related to clients he or she serviced while at the firm be taken with him or her.

To ensure compliance with GLB and SEC Regulation SP, the new firm will limit the use of the Client Information to the solicitation by the RR of his or her former clients and will not permit the use of the Client Information by any other RR or for any other purpose. If a former client indicates to the new firm that he/she would like the prior firm to provide account number(s) and/or account information to the new firm, the former client will be asked to sign a standardized form authorizing the release of the account number(s) and/or account information to the new firm before any such account number(s) or account information are provided.

The prior firm will forward to the new firm the client's account number(s) and/or most recent account statement(s) or information concerning the account's current positions within one business day, if possible, but, in any event, within two business days, of its receipt of the signed authorization. This information will be transmitted electronically or by fax, and the requests will be processed by the central back office rather than the branch where the RR was employed. A client who wants to transfer his/her account need only sign an ACAT form.

RRs that comply with this protocol would be free to solicit customers that they serviced while at their former firms, but only after they have joined their new firms. A firm would continue to be free to enforce whatever contractual, statutory or common law restrictions exist on the solicitation of customers to move their accounts by a departing RR before he or she has left the firm.

The RR's former firm is required to preserve the documents associated with each account as required by SEC regulations or firm record retention requirements.

It shall not be a violation of this protocol for an RR, prior to his or her resignation, to provide another firm with information related to the RR's business, other than account statements, so long as that information does not reveal client identity.

Accounts subject to a services agreement for stock benefits management services between the firm and the company sponsoring the stock benefit plan that the account holder participates in (such as with stock option programs) would still be subject to (a) the provisions of that agreement as well as to (b) the provisions of any account servicing agreement between the RR and the firm. Also, accounts subject to a participation agreement in connection with prospecting IRA rollover business would still be subject to the provisions of that agreement.

If an RR is a member of a team or partnership, and where the entire team/partnership does not move together to another firm, the terms of the team/partnership agreement will govern for which clients the departing team members or partners may take Client Information and which clients the departing team members or partners can solicit. In no event, however, shall a team/partnership agreement be construed or enforced to preclude an RR from taking the Client Information for those clients whom he or she introduced to the team or partnership or from soliciting such clients

In the absence of a team or partnership written agreement on this point, the following terms shall govern where the entire team is not moving: (1) If the departing team member or partner has been a member of the team or partnership in a producing capacity for four years or more, the departing team member or partner may take the Client Information for all clients serviced by the team or partnership and may solicit those clients to move their accounts to the new firm without fear of litigation from the RR's former firm with respect to such information and solicitations; (2) If the departing team member or partner has been a member of the team or partnership in a producing capacity for less than four years, the departing team member or partner will be free from litigation from the RR's former firm with respect to client solicitations and the Client Information only for those clients that he or she introduced to the team or partnership.

If accounts serviced by the departing RR were transferred to the departing RR pursuant to a retirement program that pays a retiring RR trailing commissions on the accounts in return for certain assistance provided by the retiring RR prior to his or her retirement in transitioning the accounts to the departing RR, the departing RR's ability to take Client Information related to those accounts and the departing RR's right to solicit those ac-

counts shall be governed by the terms of the contract between the retiring RR, the departing RR, and the firm with which both were affiliated.

A signatory to this protocol may withdraw from the protocol at any time and shall endeavor to provide 10 days' prior written notice of its withdrawal to all other signatories hereto. A signatory who has withdrawn from the protocol shall cease to be bound by the protocol and the protocol shall be of no further force or effect with respect to the signatory. The protocol will remain in full force and effect with respect to those signatories who have not withdrawn.

Citigroup Global Markets Inc. ("Smith Barney")

By: _____

    Name:  Kevin McManus
    Title:   Managing Director and Chief
            Administrative Officer, Private
            Client Branch System

Merrill Lynch, Pierce, Fenner & Smith Incorporated

By: _____

    Name:  Phil Sieg
    Title:   Managing Director, Head of Strategic
            Leadership and Development

UBS Financial Services Inc.

By: _____ EVP

    Name:  Barry Buchsbaum
    Title:   Director of Strategic Development
            Executive Vice President

counts shall be governed by the terms of the contract between the retiring RR, the de- parting RR, and the firm with which both were affiliated.

A signatory to this protocol may withdraw from the protocol at any time and shall endeavor to provide 10 days' prior written notice of its withdrawal to all other signatories hereto. A signatory who has withdrawn from the protocol shall cease to be bound by the protocol and the protocol shall be of no further force or effect with respect to the signatory. The protocol will remain in full force and effect with respect to those signatories who have not withdrawn.

AGREED AND ACCEPTED THIS 19TH DAY OF AUGUST, 2004.

STEPHENS INC.

By: *David Knight*
    Name: David Knight
    Title: Executive Vice President
            General Counsel

**EXHIBIT C**



**CREDIT SUISSE SECURITIES (USA) LLC**
One Madison Avenue     Phone    212 325 2000
New York, NY 10010-3629   www.credit-suisse.com

November 18, 2010

## VIA E-MAIL AND FEDERAL EXPRESS

Joseph E. Gehring, Jr., Esq.
Gehring & Satriale LLC
370 Lexington Avenue, Suite 1200
New York, New York 10017

      Re:    <u>William Nash</u>

Dear Mr. Gehring:

I write in response to your letter of November 12, 2010, to George Whipple, and your subsequent e-mails to me concerning William Nash, a Relationship Manager who recently joined Credit Suisse Securities (USA) LLC ("Credit Suisse"). You have expressed concerns about compliance with the Protocol for Broker Recruiting to which both Morgan Stanley Smith Barney ("MSSB") and Credit Suisse are parties. At the outset, we take such matters very seriously and we appreciate you having brought your client's concerns to our attention. Having looked into the matter for you, I can offer the following responses.

First, Mr. Nash has confirmed to me that he is not in possession of any confidential or proprietary information from MSSB (including client contact information). Given that there is no evidence that Mr. Nash has any MSSB confidential or proprietary information, we frankly do not see why a certification under oath is necessary or appropriate here.

Second, as to clients, I understand that MSSB does not take issue with the Protocol list that Mr. Nash submitted to MSSB. With respect to the list, however, as it has been explained to me, the process of assigning the accounts from the dissolved partnership was not complete at the time of Mr. Nash's departure from MSSB, so the list he provided is not in fact a complete list of the clients he serviced at MSSB. Rather, it was the only printout to which he had access, so he provided MSSB with the list that he could. In addition, my understanding is that all of the clients that Mr. Nash serviced as part of his now-dissolved partnership were serviced by Mr. Nash at Bear Stearns before he came to MSSB just a few years ago. This includes the two clients you mentioned in your email. If you have different information, I ask that you share it with me.

Based on my review of this situation, it does not appear to me that there has been any violation of the Protocol. Rather, although the Protocol list was not complete, since he submitted the only list to which he had access, Mr. Nash appears to have exercised good faith in submitting his list. But even if the Protocol's protections were unavailable



in whole or part, I do not see a basis for MSSB to raise concerns about Mr. Nash's contact with clients he serviced at Bear Stearns, has known for years, and brought with him to MSSB, especially since MSSB has not asserted that there is a binding restrictive covenant that would (were it not for the Protocol, which supersedes such covenants) operate to limit Mr. Nash's ability to work with clients.

I am happy to discuss any of the foregoing points with you if there is any open area on which we disagree or if you think I am missing something. However, I must point out that I have heard reports that some of Mr. Nash's former partners have made disparaging comments to clients concerning Mr. Nash. As we continue to work together to amicably resolve any open issues, I would ask that you please instruct these former partners to refrain from making any further such statements going forward.

Credit Suisse expressly reserves all rights and remedies.

Very truly yours,

Dylan Pollack
Vice President & Counsel

cc:     William Nash



**CREDIT SUISSE SECURITIES (USA) LLC**
One Madison Avenue          Phone    212 325 2000
New York, NY 10010-3629     www.credit-suisse.com

November 22, 2010

**VIA E-MAIL AND FEDERAL EXPRESS**

Joseph E. Gehring, Jr., Esq.
Gehring & Satriale LLC
370 Lexington Avenue, Suite 1200
New York, New York 10017

      Re:    William Nash

Dear Mr. Gehring:

      I write in response to your emails of Friday, November 19, 2010, and today. You have taken the position that Mr. Nash was in a partnership that began at Bear Stearns and then moved to Morgan Stanley Smith Barney ("MSSB"), and you assert that the partnership was less than four years old. I am not certain that you are correct in this regard, but I am told that the partnership had been dissolved well in advance of Mr. Nash's departure from MSSB. Accordingly, it is not clear to me why the Protocol provisions concerning partnerships would apply here. Moreover, as I pointed out in my letter of November 18, 2010, the Protocol does not create a restrictive covenant, as I read it. Rather, it limits the effect of otherwise existing restrictive covenants, and as far as I am aware, there is no restrictive covenant here. Also, it seems that the client relationships at issue were all developed by Mr. Nash before joining MSSB. Again, if you have different information on any of this, please let me know.

      I understand that MSSB wishes to protect its rights to confidential and proprietary information, and I again confirm that Mr. Nash has assured me he has no such information. If you have different information, please let me know.

      As I noted before, based on my review of this situation, it does not appear to me that there has been any violation of the Protocol or any obligations that are owed to MSSB. I note, however, that I have had no response from MSSB concerning the reports that some of Mr. Nash's former partners have made disparaging comments to clients concerning Mr. Nash. We would appreciate some assurance from MSSB that such comments will cease.



Credit Suisse expressly reserves all rights and remedies.

Very truly yours,

Dylan Pollack
Vice President & Counsel

cc:     William Nash

**EXHIBIT D**

# AFFIDAVIT

I, Wilhelm "Bill" Nash, do hereby depose and state:

1. As of the date of this affidavit, I am no longer employed by Morgan Stanley Smith Barney LLC ("MSSB"), branch office located at 1221 Avenue of the Americas, New York, NY. I have not retained in my possession, custody or control any copies, electronically or otherwise, of any records, documents, memoranda, notes, or computer data, including, but not limited to, any electronic storage devices, containing confidential and proprietary information of Morgan Stanley Smith Barney LLC ("MSSB") and its customers.

2. I have not sent or disclosed any confidential and proprietary MSSB and customer information to anyone outside of MSSB, including to any person employed by or affiliated with any person, firm or business, and I have not used them in connection with my efforts to secure employment with any person, firm or business.

3. I further acknowledge and agree that solely because of and based on my representations and warranties in this affidavit, MSSB has agreed to refrain from pursuing immediate legal and other recourse against me in connection with the removal of confidential and proprietary MSSB and customer information from MSSB. MSSB is relying on my execution of this affidavit to assure MSSB that I have fully complied with the specific promises contained in paragraphs 1 and 2, and that I shall not seek to damage or harm MSSB or any of its ongoing business enterprises, while pursuing my personal and professional interests in any subsequent endeavor. I understand that MSSB fully reserves its rights to pursue any and all remedies against me in the event that my actions threaten or cause damage to MSSB or its business interests.

4. I understand that any failure to fulfill completely and fully the obligations and promises contained in paragraphs 1 and 2 or any determination that any of the statements or representations made in this affidavit are misleading, purposefully inaccurate or untrue would cause MSSB great and irreparable harm, for which MSSB will have no adequate remedy at law. As such, I understand and acknowledge that, in addition to any and all other rights and remedies MSSB may have to seek actual and consequential damages flowing both directly and indirectly from my breach of these representations and warranties from me personally and from other parties, MSSB, without having to demonstrate such harm, shall be entitled to immediate injunctive and other equitable relief against me to prevent a breach or continued breach of my representations and warranties. I understand and acknowledge that MSSB fully reserves its rights to pursue these and any other remedies against third parties in the event such parties act in concert or otherwise with me to breach or violate the statements or representations made in this affidavit.

I swear, under penalty of perjury, that the above statement is true.

DATE_____

_____
PRINT NAME – FORMER EMPLOYEE

_____
SIGNATURE -- FORMER EMPLOYEE

_____
Notary Public

**EXHIBIT E**

# Coss & Momjian, LLP

Attorneys at Law

111 Presidential Boulevard, Suite 233

Bala Cynwyd, PA 19004

Telephone: 610-667-6800

Fax: 610-667-6620

April 13, 2012

<u>Via Federal Express</u>

Alexander C.B. Barnard, Esq.
Director & Counsel
Credit Suisse Securities (USA) LLC
Legal and Compliance Division
One Madison Avenue
New York, NY 10010

Re: <u>Wilhelm Nash</u>

Dear Mr. Barnard:

We are writing with respect to Wilhelm Nash, who formerly worked as a financial advisor for Morgan Stanley Smith Barney, LLC ("MSSB") in New York City. Mr. Nash resigned from MSSB on or about November 5, 2010 and immediately began working at Credit Suisse Securities (USA) LLC ("Credit Suisse").

In violation of the Protocol for Broker Recruiting (the "Protocol") and in violation of his express contractual obligations to MSSB, MSSB believes that Mr. Nash (i) retained confidential MSSB client information and (ii) continues to solicit the clients serviced by his former team of financial advisors at MSSB.

As a preliminary matter, it is our understanding that Mr. Nash did not comply with the Protocol in that he failed to provide to MSSB management "a copy of the Client Information that the RR is taking with him. . . ." Moreover, MSSB has recently learned that Mr. Nash retained a wide variety of confidential MSSB client information well beyond the scope of the Protocol. For example, on August 31, 2010, only a little more than two months prior to his resignation, Mr. Nash e-mailed to his personal e-mail address various lists of MSSB clients containing <u>MSSB account numbers as well as asset and revenue figures pertaining to those clients</u>. On September 16, 2010, Mr. Nash again e-mailed to his personal e-mail address (as well as to his personal attorney) a list of MSSB clients and <u>those clients' MSSB account numbers</u>. On October 7, 2010, Mr. Nash once again sent an e-mail to his personal attorney containing a list of MSSB clients, <u>including their account numbers as well as asset and revenue figures</u>.

To the extent Mr. Nash has retained confidential MSSB client information as stated above, he has violated the Protocol and his express obligations set forth in section 2 of his Financial Advisor Employment Agreement. (*See* Exhibit "A" hereto).[1] We note that the Addendum to the Financial Advisor Employment Agreement (also attached as part of Exhibit "A" hereto) has no application because Mr. Nash has not paid the amounts owed under his promissory note. Even if he had fully satisfied his promissory note obligations, the Addendum, like the Protocol, only permitted Mr. Nash to retain client "contact information". As set forth above, it appears that Mr. Nash retained highly confidential and proprietary MSSB client information.

Regarding the solicitation of MSSB clients, Mr. Nash, with the active assistance of Credit Suisse, is continuing to solicit MSSB clients, including those clients he had no role whatsoever in introducing to the team of advisors of which he was a part. In section 3 of his Financial Advisor Employment Agreement, Mr. Nash agreed that he would not solicit MSSB clients for one year following the termination of his employment. The Addendum to the Financial Advisor Employment Agreement has no application because Mr. Nash has not satisfied his promissory note obligations.

MSSB reserves the right to seek monetary damages and injunctive relief against Mr. Nash and Credit Suisse arising out of the violations of Mr. Nash's contractual obligations. MSSB also reserves the right to seek monetary damages and injunctive relief against Mr. Nash and Credit Suisse arising out of the retention and/or use of MSSB's trade secret client information. We note that Credit Suisse vigilantly enforces its own confidentiality and non-solicitation rights under similar circumstances. *See, e.g., Credit Suisse Securities (USA) LLC v. Ebling*, 2006 U.S.Dist. Ct. LEXIS 86351 (S.D.N.Y., November 27, 2006).

Demand is hereby made that Credit Suisse ensure full compliance with MSSB's contractual, trade secret, and other legal rights. This includes, without limitation, immediately instructing Mr. Nash, and all others acting in concert with him, to refrain from soliciting MSSB's clients through the use of any confidential information. MSSB also demands immediate return of its confidential client information, along with sworn assurances from Mr. Nash and anyone acting in concert with him, that all such information has been returned to MSSB and properly purged from his and Credit Suisse's possession, custody and control.

Thank you for your prompt attention to this matter. We look forward to coordinating the

---

[1] Mr. Nash's agreement contains an assignability provision, as set forth in section 8.

2

immediate return of MSSB's confidential client information and securing the appropriate sworn statements.

Very truly yours,

Thomas J. Momjian

Enclosure

EXHIBIT "A"

*MORGAN STANLEY*     FINANCIAL ADVISOR
            EMPLOYMENT AGREEMENT

This agreement (referred to as the, or this, "Agreement") is made between Morgan Stanley & Co. Incorporated, a Delaware Corporation, (referred to as "Morgan Stanley") and

_____.

In consideration of your compensation and employment by Morgan Stanley as a Financial Advisor, and for other good and valuable consideration, you hereby agree as follows:

1. **AT-WILL EMPLOYMENT AND TERMINATION**

Nothing in this Agreement is a promise of employment for a fixed term. Your employment by Morgan Stanley is strictly at-will and may be terminated by either party, for any reason or for no reason, at any time, with or without notice, and with or without cause. As used in this Agreement, "termination" includes (1) voluntary or involuntary resignation, (2) retirement, (3) release due to a reduction in force or closing of a branch office, or (4) discharge by Morgan Stanley. _____ (EMPLOYEE INITIALS)

2. **TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION**

2.1 In the course of your employment with Morgan Stanley, you will have access to information that has been acquired by expenditures of time, effort, and money by Morgan Stanley, and which is valuable and proprietary to Morgan Stanley because, among other reasons, this information it is not known by, or available to, the general public or persons or entities other than in the ordinary course of conducting business for Morgan Stanley and its affiliates. This information includes, but is not limited to: (a) customer files, lists, and holding pages; (b) the names, addresses, telephone numbers, and assets and obligations carried in the accounts of Morgan Stanley's customers; (c) Morgan Stanley customer account histories and customer risk profiles; (d) computer software or hardware for use in computer or word processing equipment; (e) all training material forwarded to you during your employment (including but not limited to books, papers, records, videotapes and recordings); (f) documents or computer programs prepared or generated by you, if any, using Morgan Stanley records or information; (g) Morgan Stanley's business or marketing plans and strategies; and (h) other information or materials subject to intellectual property protection that are highly confidential. All of the above described information and documents are hereinafter collectively referred to as "Trade Secrets." You acknowledge and agree that these Trade Secrets are unique, cannot lawfully be easily duplicated or acquired, and that Morgan Stanley views the Trade Secrets as highly confidential and takes all reasonable measures to maintain their confidentiality and secrecy. _____ (EMPLOYEE INITIALS)

2.2 In the course of your employment with Morgan Stanley, you will also have access to records, documents, and information concerning the business and affairs of Morgan Stanley and its employees (hereinafter "Company Records") that are and will always be the confidential and exclusive property of Morgan Stanley. Company Records include, but are

not limited to, Morgan Stanley books and records and excerpts or derivations thereof. Company Records also include information and documents described as Trade Secrets in Paragraph 2.1 above. Company Records include the originals and all copies thereof (whether in hard copy, computerized, or any other form). _____ (EMPLOYEE INITIALS)

2.3 You agree that, during the course of your employment with Morgan Stanley or otherwise, you will not remove Trade Secrets or other Company Records from the premises of Morgan Stanley in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Morgan Stanley. You also agree that you will not use Trade Secrets or other Company Records for any purpose other than the purpose of conducting the business of Morgan Stanley. You further agree that (a) your use of Trade Secrets and other Company Records will stop immediately upon the suspension or termination of your employment relationship with Morgan Stanley; (b) you will immediately deliver to Morgan Stanley, at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Trade Secrets or other Company Records in your possession or control; and (c) you will permit Morgan Stanley to inspect, prior to removal, any materials you intend to take from Morgan Stanley offices when your employment with Morgan Stanley is suspended or terminated. In addition, you agree that, should you decide to terminate your employment with Morgan Stanley, your use of Trade Secrets and other Company Records will stop immediately and permanently, unless otherwise agreed to by Morgan Stanley. _____ (EMPLOYEE INITIALS)

2.4 You agree that, both during and subsequent to the course of your employment with Morgan Stanley, you will not disclose to any person or entity the contents, in whole or in part, of Trade Secrets or other Company Records, except in the ordinary course of conducting business for Morgan Stanley. _____ (EMPLOYEE INITIALS)

2.5 You will not at any time assert any claim of ownership or other property interest in Trade Secrets or other Company Records. _____ (EMPLOYEE INITIALS)

2.6 If you create, contribute to or conceive any copyrightable work within the scope of your employment at Morgan Stanley, Morgan Stanley may assert that such copyrightable work is a "work-made-for-hire," and you agree that, upon Morgan Stanley's assertion that a work is a "work-made-for-hire," Morgan Stanley shall own all such rights in the copyrightable work. _____ (EMPLOYEE INITIALS)

3. UNFAIR COMPETITION

3.1 You acknowledge and agree that the resources, training, goodwill and reputation of Morgan Stanley are the primary and material factors in your ability to develop and service Morgan Stanley customers, and that all customers serviced by you on behalf of Morgan Stanley are customers of Morgan Stanley. _____ (EMPLOYEE INITIALS)

3.2 For a period of one year following termination of employment for any reason, you will not solicit or attempt to solicit, directly or indirectly, any of Morgan Stanley's customers who were served by you, or whose names became known to you, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities,

commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. For purposes of this provision, the term "solicit" includes initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged. _____ (EMPLOYEE INITIALS)

3.3    For a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. _____ (EMPLOYEE INITIALS)

## 4.    RIGHT TO INJUNCTION

4.1    In the event you breach any of your obligations concerning "Trade Secrets and Other Confidential Information" or "Unfair Competition" contained in paragraphs 2 or 3 of this Agreement, you agree that Morgan Stanley will be entitled to injunctive relief from a court of competent jurisdiction, or from any arbitration forum specified in this Agreement. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration (as provided for in paragraph 7 of this Agreement). Therefore, YOU CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:

    (a)    that you immediately return to Morgan Stanley all Trade Secrets and Company Records, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any information contained in such materials; _____ (EMPLOYEE INITIALS)

    (b)    that, for a period of one year following the termination of your employment, you be enjoined and restrained from soliciting or attempting to solicit, directly or indirectly, any of Morgan Stanley's customers who were served by you, or whose names became known to you, while in the employ of Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged; _____ (EMPLOYEE INITIALS) and

    (c)    that, for a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which

Morgan Stanley or any of its affiliates is engaged. _____ **(EMPLOYEE INITIALS)**

4.2    You agree that Morgan Stanley's application to any court for an injunction or other provisional relief will not constitute a waiver by Morgan Stanley of its right to arbitration as provided for in paragraph 7.1 of this Agreement, and that any hearing on the merits in such dispute shall be conducted in arbitration. If, after issuance of a temporary restraining order or permanent injunction, the parties proceed to arbitration, you agree to consent to expedited hearing procedures for such arbitration. You further agree that any injunction or provisional order shall stay in full force and effect until a panel of arbitrators renders a full and final decision on the merits. _____ **(EMPLOYEE INITIALS)**

5.    **ADHERENCE TO APPLICABLE LAWS AND POLICIES**

You agree to become familiar with and abide by the rules, regulations, and policies of Morgan Stanley, the Financial Industry Regulatory Authority, and any other securities and commodities exchanges of which Morgan Stanley is a member. You also agree to become familiar with and abide by any applicable state and federal securities laws and regulations. _____ **(EMPLOYEE INITIALS)**

6.    **HOLD HARMLESS**

You agree to indemnify Morgan Stanley for, and hold it harmless from, any and all losses or liabilities incurred by Morgan Stanley caused by (a) your violation of applicable state or federal laws, duties, rules or regulations; (b) your violation of Morgan Stanley's policies; or (c) your breach of any of the provisions of this Agreement. You further agree to indemnify Morgan Stanley, consistent with and as permitted by law, for your commission deficits, other employee losses, or customer losses, that are caused or permitted by you. Consistent with and as permitted by applicable law, you authorize Morgan Stanley, with or without notice to you, to withhold amounts equal to any such losses or liabilities from amounts payable, due, or held in an account or otherwise for you, including, but not limited to, assets held by you in any investment or securities related account(s), and from any commissions, bonuses, deferred, incentive or other compensation (above minimum salary or draw). _____ **(EMPLOYEE INITIALS)**

7.    **ARBITRATION**

7.1    Any controversy or claim arising out of or relating to (i) your employment by Morgan Stanley (excluding statutory employment claims and other claims covered by Paragraph 7.2), or (ii) this Agreement (or its breach), will be settled by arbitration before the Financial Industry Regulatory Authority ("FINRA") in accordance with their respective rules, and judgment upon an award issued by the arbitrator(s) may be entered in any court having jurisdiction. Except as otherwise expressly agreed, any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration.

This paragraph will not be deemed a waiver of Morgan Stanley's right to injunctive or provisional relief from any court, as provided for in this Agreement. _____(EMPLOYEE INITIALS)

7.2 Notwithstanding the arbitration requirement of paragraph 7.1 above, you agree that certain other claims (including, but not limited to, statutory discrimination and other statutory employment claims) must be submitted to Morgan Stanley's Alternate Dispute Resolution Program, "Convenient Access to Resolutions for Employees" ('CARE'). Claims required to be submitted to CARE are recited in the CARE Guidebook maintained by the CARE Program Administrator's Office and in the CARE Program explanatory brochure. _____(EMPLOYEE INITIALS)

8. **SUCCESSORS, ASSIGNS AND AFFILIATES**

The provisions, benefits and obligations of this Agreement will run to the successors, affiliates and assigns of Morgan Stanley. _____(EMPLOYEE INITIALS)

9. **GOVERNING LAW**

This Agreement will be governed by and construed in accordance with the laws of the state in which you signed this Agreement. _____(EMPLOYEE INITIALS)

10. **WAIVER**

Morgan Stanley's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Morgan Stanley's right to enforce any other breach of the same or any other covenant. _____(EMPLOYEE INITIALS)

11. **SEVERABILITY**

11.1 If any provision or portion of any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body, or a court of competent jurisdiction, the remainder of the Agreement will remain in full force and effect. _____(EMPLOYEE INITIALS)

11.2 If any of the covenants, including but not limited to restrictive covenants, contained in this Agreement or any part thereof are held to be unreasonable and/or unenforceable, the parties agree that the court or arbitrator(s) making such determination shall have the power to revise such provision(s), so as to render such provision(s) reasonable and enforceable, upon which such provision(s) shall then be enforceable. _____(EMPLOYEE INITIALS)

12. **ATTORNEYS' FEES**

In the event of a breach of any of the terms of this Agreement by you, you agree to pay all fees and costs, including reasonable attorneys' fees, incurred by Morgan Stanley in connection with the enforcement of this Agreement. _____ (EMPLOYEE INITIALS)

13. **ENTIRE AGREEMENT**

This writing constitutes the entire agreement of the parties with respect to the subject matter recited in this Agreement. This Agreement may be amended only by a writing signed by both you and Morgan Stanley. _____ (EMPLOYEE INITIALS)

14. **EMPLOYEE REPRESENTATION**

You represent as follows:

I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MORGAN STANLEY QUESTIONS ABOUT IT. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM. MY INITIALS FOLLOWING THE ABOVE PROVISIONS INDICATE THAT I HAVE READ THEM. MY SIGNATURE BELOW INDICATES MY AGREEMENT TO ALL PROVISIONS HEREIN WHETHER OR NOT I HAVE INITIALED THEM.

Signed in the State of _New York, New York_

_____    Date ___3/1/08___
Employee's Signature

MORGAN STANLEY & CO. INCORPORATED

_____    ___3.19.08___
Branch Manager's Signature            Date

## ADDENDUM OF FINANCIAL ADVISOR EMPLOYMENT AGREEMENT

1.    Paragraphs 2.1, 2.2, 2.3, 2.4, 2.5, and 4.1(a) of the Financial Advisor Employment Agreement ("Agreement") are hereby amended by adding the following at the end of said paragraphs:

> Notwithstanding anything to the contrary in paragraphs 2.1, 2.2, 2.3, 2.4, 2.5, and 4.1(a), upon termination of employment with Morgan Stanley for any reason, Employee may retain copies of and use publicly available customer contact information (names, address and telephone numbers) for those customers whom he/she serviced prior to his/her employment with Morgan Stanley. A list of such customers' information shall be attached to this Agreement as Exhibit "A." This exception to paragraphs 2.1, 2.2, 2.3, 2.4, 2.5, and 4.1(a), shall become effective only upon the payment by Employee of all sums owed to Morgan Stanley at the time of termination under any promissory note signed by Employee.

2.    Paragraphs 3.1, 3.2, and 4.1(b) of the Agreement are hereby amended by adding the following at the end of said paragraphs:

> Notwithstanding anything to the contrary in paragraphs 3.1, 3.2, and 4.1(b), upon termination of employment for any reason, Employee may solicit and attempt to solicit, directly or indirectly, those customers whom he/she serviced prior to employment with Morgan Stanley. A list of such customers' names is attached to this Agreement as Exhibit "A." This exception to paragraphs 3.1, 3.2, and 4.1(b) shall become effective only upon the payment by Employee of all sums owed to Morgan Stanley at the time of termination under any promissory note signed by Employee.

3.    If there is any conflict between the Addendum and the Financial Advisor Employment Agreement, this Addendum shall control.

4.    This Addendum is confidential. As a further term of the Agreement, Employee agrees that he will not disclose the existence of this Addendum or terms of this Addendum to any persons or parties; provided, however that this prohibition shall not apply to disclosures ( i ) to Employee's immediate family; ( ii ) to Employee's attorneys and/or tax advisors; ( iii ) to requests initiated by any state or federal regulatory agency or securities industry self-regulatory organization; ( iv ) in response to a validly issued subpoena or court order; or (v) as otherwise permitted or required by law in connection with any court action, arbitration or other legal proceeding to enforce this provisions of this Agreement. Any individuals to whom Employee makes any disclosure in accordance with items ( i ) and/or ( ii ) of this paragraph shall be advised by Employee of this confidentiality provision prior to any such disclosure, and shall agree thereafter to be bound by this confidentiality provision. Unless otherwise prohibited by applicable law, regulation or court order, prior to making any disclosure in accordance with items ( iii ) and/or ( iv ) of this paragraph, Employee shall provide

his/her District Manager with notice of the request, subpoena or court order, so that Morgan Stanley may have the opportunity to answer, object or otherwise respond to it.

_____     _____ 3/18/08
Employee's Signature                                    Date

MORGAN STANLEY & CO. INCORPORATED

By: _____     _____ 3-19.08
        Branch Manager                                       Date

By: _____     _____ 3-28-08
        District Manager                                        Date